UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACYE D. WASHINGTON,<br><br>          Plaintiff,<br>v.<br>O'DELL, et al.,<br><br>          Defendants. | Case No.: 3:17-cv-1615-MMA-PCL<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PORTIONS OF PLAINTIFF'S COMPLAINT;**<br><br>[Doc. No. 23]<br><br>**DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>[Doc. No. 27] |

  Plaintiff Tracye Washington, a California state prisoner, has filed a complaint alleging civil rights violations under 42 U.S.C. § 1983 against the warden of R. J. Donovan Correctional Facility, associate warden, and several prison employees. *See* Doc. Nos. 4 (Complaint), 10 (Supporting Exhibits). Plaintiff alleges violations of his First, Eighth, and Fourteenth Amendment rights. Defendants moved to dismiss portions of the complaint. *See* Doc. No. 23. Plaintiff filed an opposition to Defendants' motion, to which Defendants replied. *See* Doc. Nos. 24, 28. In addition, Plaintiff moves for preliminary injunctive relief. *See* Doc. No. 27. For the reasons set forth below, the Court **GRANTS** Defendants' motion to dismiss portions of Plaintiff's complaint and **DENIES** Plaintiff's motion for a preliminary injunction.

# BACKGROUND[1]

This action arises out of events occurring between September 2016 and April 2017 while Plaintiff was housed at R. J. Donovan Correctional Facility ("RJD").[2]

## I.     Missing Radio and Legal Papers

On September 26, 2016, Plaintiff discovered his cell in disarray and his radio missing. When Plaintiff asked that the radio be returned, Defendant Buenostro told Plaintiff to provide documents proving ownership of the radio. Later, Plaintiff provided Buenostro the radio ownership document, but Buenostro refused to accept the document. Plaintiff then saw a social worker and explained his radio grievance. When Plaintiff returned to his cell, he "wrote a CDCR-22 Interview Request to Defendant Buenostro asking why he had confiscated plaintiff's radio and asked that it be returned." Complaint at 12.[3] Plaintiff then handed it to Buenostro for his signature and copy.

On September 27, 2016, Plaintiff returned from breakfast and "discovered that one 30 pound stack of his legal work was missing." Complaint at 12. Plaintiff then requested a porter to ask Buenostro where Plaintiff's legal work was located. The porter returned and told Plaintiff that the legal work was in the "custody officers area." *Id*. at 12. Plaintiff then wrote a CDCR-22 Interview Request and then presented it to Buenostro for review and signature. On September 29, 2016, Plaintiff returned to his cell and found his radio and legal materials but noticed "that some legal papers related to his incarceration case and lawsuit were missing." *Id*. at 13.

//

---

[1] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the complaint. *See Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 740 (1976).

[2] Plaintiff is currently housed at California Health Care Facility in Stockton, California. *See* Doc. No. 32.

[3] All citations refer to the pagination assigned by the CM/ECF system.

## II. Verbal Harassment

On October 6, 2016, Buenostro entered Plaintiff's cell and informed Plaintiff that his clinician wanted to speak with him. When Plaintiff asked Buenostro to leave his cell, Buenostro told Plaintiff that he could enter the cell any time he wanted. Buenostro then "moved toward the cell door then turned to face plaintiff with his hands on his pepper-spray canister at his side and stated, 'I ought to spray your ass.'" *Id*. at 14.

## III. Placement in Administrative Segregation

Plaintiff alleges that on October 26, 2016 at 9:09 p.m., Defendant Bermudez approached Plaintiff's cell door and hit the window with his baton. Bermudez told Plaintiff to pack his property because he was being moved to an upper tier cell with inmate Farely. Plaintiff responded that his medical condition restricted him to "Lower-Tier Lower Bunk" because of his "[o]steo-arthritis in his knees[,] back[,] and other joints and that he had a walking cane and chronos to prove it." *Id*. at 15.

Defendant Bermudez returned with Defendant Sergeant Scharr, and they demanded that Plaintiff move to the new cell "or go to the ASU." *Id*. Plaintiff stated that "he was not going to the upper bunk and that inmate Farely had went on suicide watch on two separate occasions in the month passed [sic] to get out of living in the cell with plaintiff, even threatening to kill someone if not moved." *Id*. Plaintiff alleges that Bermudez knew about Farely because he was the officer on duty during the event. Bermudez then started cursing at Plaintiff, and "struck [Plaintiff] in the face with his baton and told [P]laintiff to "pack up his shit because he was going to the hole." *Id*. Plaintiff packed his property and was taken to a holding cell for a pre-administrative segregation medical examination, where he "informed medical staff that Officer Bermudez had assaulted him." *Id*. at 16. Before Plaintiff could be placed in administrative segregation, he "expressed suicidal ideations," and subsequently he was placed on suicide watch. *Id*.

## IV. Conditions of Confinement

Around March 23, 2017, Plaintiff was released from the Security Housing Unit and

moved to a new cell. As Plaintiff approached the new cell, he smelled feces and urine, observed the toilet filled with human waste and the floor covered in feces. Plaintiff "stated he would rather go [sic] suicide watch than go into that cell." *Id*. at 21. When Plaintiff was not deemed eligible for suicide watch, custody staff "gave Plaintiff an ultimatum of returning to the cell or going to ASU." *Id*. "Plaintiff returned to the cell and was given gloves, plastic bags[,] and disinfectant to clean an area of the cell for him to lay down for the remainder of the night with the promise to have the cell inspected and repaired in the morning." *Id*. at 22.

Cellmate Iose, a severely mentally ill inmate, informed Plaintiff the toilet had been unusable for almost a week. Plaintiff was told that the prison no longer would contact a plumber because Iose repeatedly clogged the toilet. However, a plumber fixed the toilet the following day. While Plaintiff was disinfecting the cell, Defendant Dr. Urban talked to Plaintiff while observing the condition of the cell. Plaintiff soon discovered the extent of Iose's mental illness: talking to himself, singing aloud, walking around the cell naked at night, playing in the toilet with his feces, insisting the cell light remain on, and threatening Plaintiff with harm several times. Plaintiff asked Defendant Ruelas to contact Iose's doctor "and numerous times thereafter to move him out of the cell to no avail." *Id*. Plaintiff "had to go to the facility health clinic" to alert a nurse about Iose's mental health concerns. *Id*. After writing a request for help to Dr. Urban, Urban responded that such conditions were a part of living in a mental health unit. Eventually, Iose was placed in a mental health crisis unit after a confrontation with prison staff.

## **LEGAL STANDARD**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard

thus demands more than a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In determining the propriety of a Rule 12(b)(6) dismissal, courts generally may not look beyond the complaint for additional facts. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.*; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir 2001). "However, [courts] are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998). Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading. *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009).

*Pro se* litigants "must be ensured meaningful access to the courts." *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc). When the plaintiff is appearing *pro se*, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2001); *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988). In giving liberal

interpretation to a *pro se* complaint, however, the court is not permitted to "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). The court must give a *pro se* litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted), citing *Noll v. Carlson*, 809 F.2d 1446, 1447 (9th Cir. 1987). But where amendment of a *pro se* litigant's complaint would be futile, denial of leave to amend is appropriate. *See James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

## DISCUSSION

### I. First Amendment Retaliation Claims

Plaintiff brings claims against Defendants Buenostro and Bermudez for retaliation in violation of his First Amendment right to freedom of speech. In order to state a plausible claim for retaliation, Plaintiff must set forth "five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted) (citing *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994)). Conduct protected by the First Amendment includes communications that are "part of the grievance process." *Brodheim v. Cry*, 584 F.3d 1262, 1271 n.4 (9th Cir. 2009).

#### A. Defendant Buenostro

Plaintiff appears to allege that Defendant Buenostro confiscated his radio and legal materials in a possible connection to a CDCR-22 Interview Request. Plaintiff further alleges that Buenostro retaliated "against plaintiff for Defendant Scharr." Complaint at 3. Defendants respond by emphasizing that Buenostro confiscated the radio before Plaintiff submitted his CDCR-22 form. Regarding Plaintiff's legal work, Defendants note that Plaintiff fails to allege exactly when the legal papers went missing, and fails to

demonstrate how the form was a "substantial or motivating factor" for the alleged confiscation. Defendants also argue that there are no allegations to support Plaintiff's claim that Defendant Buenostro retaliated against Plaintiff "for Defendant Scharr."

Plaintiff fails to allege a plausible retaliation claim against Defendant Buenostro. Plaintiff's own allegations undercut the causation element of his claim. Because Plaintiff submitted the CDCR-22 form after he noticed the missing radio, the form could not have been a reason for correctional officers to confiscate it. *See, e.g., Rhodes*, 408 F.3d at 563, 567–68 (finding a causal connection when the retaliatory action arose *after* a submitted grievance). Moreover, Plaintiff fails to show how the action chilled his First Amendment rights. Instead, the factual allegations suggest otherwise, as Plaintiff submitted the CDCR-22 form after his radio was confiscated. Plaintiff also fails to plead facts showing that the "action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 568. Finally, Plaintiff fails to plead facts to support Plaintiff's claim that Officer Buenostro retaliated against Plaintiff "for Defendant Scharr."

Accordingly, the Court **DISMISSES** Plaintiff's First Amendment retaliation claim against Defendant Buenostro without prejudice and with leave to amend.

### B. Defendant Bermudez

Plaintiff alleges Defendant Bermudez retaliated by striking Plaintiff in the face, and moving Plaintiff to administrative segregation after Plaintiff refused a new cell assignment. Defendants respond that Plaintiff has not alleged he engaged in any conduct protected by the Constitution, and point out that the refusal to move to a new cell is not protected conduct.

Plaintiff fails to state a plausible First Amendment retaliation claim against Defendant Bermudez. "Being placed in administrative segregation constitutes an adverse action." *Shepard v. Quillen*, 840 F.3d 686, 688 (9th Cir. 2016) (citing *Watison v. Carter*, 668 F.3d 1108, 1115 (9th Cir. 2012)); *see also Mason v. Martinez*, No. 214CV1041MCEACP, 2017 WL 1179405, at *11 (E.D. Cal. Mar. 29, 2017). However, whereas filing a grievance is protected conduct, *Brodheim*, 584 F.3d at 1269, *refusing* a

cell transfer is not protected conduct under the First Amendment.  *But see Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) (holding that "repeated threats of transfer because of [plaintiff's] complaints about the administration of the library" were sufficient to establish a retaliation claim).  The First Amendment does not provide an impregnable fortress for prisoners to avoid any administrative change that they merely do not prefer.  Because Plaintiff fails to plead that he engaged in a protected activity, Plaintiff fails to establish a retaliation claim.

Accordingly, the Court **DISMISSES** Plaintiff's First Amendment retaliation claim against Defendant Bermudez without prejudice and with leave to amend.

## II. First Amendment Access to Courts Claim

Plaintiff alleges Defendant Buenostro interfered with his access to the courts when Plaintiff noticed his legal papers were missing and placed in the custody officers' area.  Defendants respond Plaintiff does not allege that the "the legal work related to direct criminal appeals, habeas petitions, or civil rights actions."  Doc. No. 23-1 at 18.  Further, Defendants argue that "Plaintiff does not allege how the lack of those particular papers frustrated or impeded his lawsuits causing injury."  Doc. No. 23-1 at 18.

The Supreme Court has held "prisoners have a constitutional right of access to the courts."  *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  In *Lewis v. Casey*, the court confined the broad language in *Bounds* by requiring that the plaintiff show actual injury to a non-frivolous claim based on a direct criminal appeal, habeas petition, or civil rights action under 42 U.S.C. § 1983.  518 U.S. 343, 351–54 (1996).  Thus, "to state a claim for interference with the right of access to the courts, an inmate must establish that inadequate facilities or interfering regulations have actually frustrated or impeded a nonfrivolous (1) criminal trial or appeal, (2) habeas proceeding, or (3) section 1983 case challenging the condition of his confinement."  *Ornelas v. Giurbino*, 358 F. Supp. 2d 955, 972 (S.D. Cal. 2005).  "Destruction or confiscation of legal work may violate an inmate's right to access to the courts . . . if plaintiff can establish actual injury."  *Washam v. Henderson*, No. C 13-4957 EDL (PR), 2014 WL 171461, at *2 (N.D. Cal. Jan. 15,

2014) (dismissing a prisoner's complaint that prison officials interfered with access to the courts by taking his legal papers because the plaintiff did not detail that he "suffered any setback").

Plaintiff fails to plead a plausible claim for interference with access to the courts. While Plaintiff sufficiently alleges that the legal work included a civil rights complaint, which makes the legal work protected under a Section 1983 cause of action, *see Lewis*, 518 U.S. at 351–54, Plaintiff fails to plead facts demonstrating how the missing legal work led to Plaintiff suffering "actual injury" "to a non-frivolous claim." *Id.* In other words, Plaintiff fails to "describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Plaintiff merely alleges that "his legal work was missing," and when the papers appeared to be returned to him "some legal papers . . . were missing." Complaint at 12, 13.

Accordingly, the Court **DISMISSES** Plaintiff's First Amendment access to courts claim against Defendant Buenostro without prejudice and with leave to amend.

### III. Eighth Amendment Claims

Plaintiff alleges Eighth Amendment violations based upon verbal harassment and the conditions of his confinement. The Eighth Amendment prohibits cruel and unusual punishment, and applies to the states through the Due Process Clause of the Fourteenth Amendment. U.S. Const. amend. VIII; *Robinson v. California*, 370 U.S. 660, 666 (1962). Thus, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989).

In order to state a plausible Eighth Amendment claim, a plaintiff must allege facts sufficient to demonstrate both objective and subjective components. First, the deprivation must be objectively serious such that the prison official's act or omission resulted "in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347

(1981)). Second, a prison official must have a "sufficiently culpable state of mind." *Id*. Under this latter component, the official will not be held liable for inhumane conditions "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

### A. Defendant Buenostro

Plaintiff alleges that Defendant Buenostro "moved toward the cell door then turned to face plaintiff with his hands on his pepper-spray canister at his side and stated, 'I ought to spray your ass.'" Complaint at 14. Defendants respond that verbal harassment alone cannot sustain a Section 1983 action.

Verbal harassment allegations directed at prisoners by guards "do not state a constitutional deprivation under 42 U.S.C. § 1983" because "a threat or exchange of verbal insults does not constitute a deprivation of liberty." *Ornelas*, 358 F. Supp. 2d at 970; *see also Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (holding that vulgar verbal abuse is not sufficient to trigger a constitutional violation). Verbal harassment—even if it includes abuse or threats—does not infringe upon a prisoner's Eighth Amendment rights. *Zavala v. Barnik*, 545 F. Supp. 2d 1051, 1058 (C.D. Cal. 2008) (finding a plaintiff's allegations of inflicted humiliation and discrimination was insufficient to state a cause of action when he was taken to the prison clinic for "decontamination" and an officer made comments on the plaintiff's race, ethnicity, and alienage); *see also Somers v. Thurman*, 109 F.3d 614, 622 (9th Cir. 1997) ("We are mindful of the realities of prison life, and while we do not approve, we are 'fully aware that the exchange of verbal insults between inmates and guards is a constant, daily ritual observed in this nation's prisons.'").

Here, the verbal harassment of "I ought to spray your ass," Complaint at 14, does not state a claim under Section 1983. Plaintiff's claim must fail because verbal harassment does "not state a constitutional deprivation under 42 U.S.C. § 1983."

*Oltarzewski*, 830 F.2d at 139.

Accordingly, the Court **DISMISSES** Plaintiff's Section 1983 claim based on the Eighth Amendment against Defendant Buenostro **with prejudice** given Ninth Circuit precedent holding that verbal harassment is not a cause of action under Section 1983 and thus this cause of action cannot be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1105–06 (9th Cir. 1995); *Oltarzewski*, 830 F.2d at 139.

### B. Defendants Urban and Ruelas

Plaintiff alleges that he was moved to a new cell with unfit living conditions, which included the following: a cell that smelled of human excrement; a toilet filled with feces; and a mentally ill cellmate that talked to himself, sung aloud, walked around the cell naked at night, played in the toilet with his feces, insisted the cell light remain on, and threatened Plaintiff with harm several times. Plaintiff claims that he requested to be moved but to no avail. Defendants respond that the Eighth Amendment does not require comfortable prisons, and that the cell's conditions did not satisfy the objective or subjective requirements to sustain a claim for inhuman conditions of confinement claim.

#### i. Objectively Serious Deprivation

Plaintiff describes a temporary, unsanitary inconvenience that does not amount to an inhumane condition of confinement under the Eighth Amendment. Although the Ninth Circuit has held that toilets in disrepair may result in an Eighth Amendment violation, *Hoptowit*, 753 F.2d at 783, it has emphasized that a lack of sanitation must be "severe or prolonged" in order to be actionable under Section 1983. *Anderson*, 45 F.3d at 1315; *Johnson*, 217 F.3d at 733. Plaintiff's own allegations reveal that the broken toilet was not a prolonged ordeal. Despite "the toilet filled with human waste and the floor covered in feces," Plaintiff also explains that a "plumber fixed the toilet the following day." Complaint at 21–22. Plaintiff was also given the choice to go to administrative segregation. Moreover, when Plaintiff complained about his cell conditions, he was supplied with gloves, plastic bags and disinfectant to clean an area of the cell for him to lay down for the remainder of the night with the promise to have the cell inspected and

repaired in the morning. As in *Anderson* where the plaintiff failed to allege how "temporary imposition" of unsanitary cell conditions harmed the plaintiff, here Plaintiff similarly fails to demonstrate an "infliction of pain" when prison officials fixed the toilet within twenty-four hours and gave Plaintiff sanitation supplies in the interim. *Anderson*, 45 F.3d at 1315.[4] Furthermore, Plaintiff fails to connect his cell placement and conditions to a defendant before the court because Officer Nunez—who placed Plaintiff in the cell—is unserved.

With regard to Defendants Urban and Ruelas, Plaintiff fails to plead an actionable claim. Plaintiff alleges that both Urban and Ruelas knew of his cellmate's eccentric behavior: talking to himself, singing aloud, walking around the cell naked at night, playing in the toilet with his feces, insisting the cell light remain on, and threatening Plaintiff with harm several times. As a basis to establish inhumane conditions of confinement, this claim fails because although prison officials can control cell sanitation, bedding, lighting, etc., they cannot control how Plaintiff's cellmate acts. Prisoners do not have an Eighth Amendment or due process right to choose or reject a cellmate. *See Rhodes*, 452 U.S. at 348 (holding that double bunking prisoners does not constitute an Eighth Amendment violation); *Allen*, 5 F.3d at 1153 (holding that prisoners do not have a due process right to be "housed in a certain barrack or housing unit, or with certain inmates"); *Grayson v. Rison*, 945 F.2d 1064, 1067 (9th Cir. 1991) ("When prison officials have legitimate administrative authority, such as the discretion to move inmates from prison to prison or from cell to cell, the Due Process Clause imposes few

---

[4] Plaintiff also asserts the cellmate informed Plaintiff that the toilet had been unusable for almost a week and that the prison no longer would contact a plumber because Iose repeatedly clogged the toilet. Plaintiff lacks standing to raise this claim. Article III standing requires a plaintiff to demonstrate three elements: (1) plaintiff must have "suffered an 'injury in fact,'" (2) "there must be a causal connection between the injury and the conduct complained of," and (3) "it must be 'likely,'" as opposed to merely "speculative," that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotations omitted). Here, although Plaintiff pleads a potential injury with respect to his cellmate, Plaintiff fails to plead that he himself suffered the injury of having an unusable toilet for a week.

restrictions on the use of that authority, regardless of any additional motives which are claimed to exist.").

Even if the Court liberally construes Plaintiff's claim to be based on a failure to protect him in light of the cellmate threatening him with harm several times, Plaintiff still fails to state a claim. "To show that a prisoner has been subject to cruel and unusual punishment by an officer's failure to protect him, he must point to evidence in the record which shows that the alleged deprivation was objectively 'sufficiently serious,' i.e., that the conditions he faced posed 'a substantial risk of serious harm.'" *Huffman v. Parmo*, No. 11CV2829-LAB DHB, 2013 WL 3795618, at *8 (S.D. Cal. July 19, 2013) (quoting *Farmer*, 511 U.S. at 834). Plaintiff's claim fails because he merely alleges that the cellmate "threatened plaintiff with harm several times." Complaint at 22. Plaintiff fails to show how the threatened harm was "sufficiently serious." *Farmer*, 511 U.S. at 834.

### ii. Subjective Deliberate Indifference

Even if Plaintiff pleaded sufficient facts to satisfy the objective prong of an Eighth Amendment claim, Plaintiff fails to allege sufficient facts to meet the subjective prong. As a preliminary matter, Plaintiff fails to show how Defendants Urban and Ruelas demonstrated deliberate indifference, because Plaintiff only explains that he had contact with them *after* he was supplied with cleaning supplies and *after* the plumber repaired the toilet. Therefore, even if the conditions were objectively cruel and unusual under the Eighth Amendment, Plaintiff fails to show that these defendants had any knowledge of, or connection to, the sanitary conditions when Plaintiff moved to the cell.

In regard to Defendant Urban, Plaintiff alleges Urban talked to Plaintiff while observing the condition of the cell and responded to Plaintiff's request for help by explaining that such conditions were a part of living in a mental health unit. Complaint at 22; Doc. No. 10 at 6. Although Urban had knowledge of the cell conditions, Plaintiff does not show how Urban's disregard of Plaintiff's complaints amounted to an "unnecessary and wanton infliction of pain" in light of the fact that such conditions were part of living in the mental health unit. *Whitle*, 475 U.S. at 319.

With regard to Defendant Ruelas, Plaintiff fails to allege that Ruelas had any knowledge of his living conditions. While Plaintiff alleges that Urban witnessed the cell conditions, Plaintiff merely states that he "requested Officer Ruelas to contact his doctor and numerous times thereafter to move him out of the cell to no avail." Complaint at 22. Plaintiff fails to show that Ruelas was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" or that Ruelas "dr[e]w the inference." *Farmer*, 511 U.S. at 837. Thus, Plaintiff fails to plead sufficient facts that meet the subjective prong of an Eighth Amendment claim as directed against Defendant Ruelas.

Accordingly, the Court **DISMISSES** Plaintiff's Eighth Amendment conditions of confinement claim against Defendants Urban and Ruelas without prejudice and with leave to amend.[5]

## IV. Fourteenth Amendment Claim

Plaintiff alleges that Defendants Scharr and Bermudez violated his Fourteenth Amendment right to due process by initiating an illegal administrative segregation placement. Defendants respond that mere administrative segregation does not trigger a due process violation and Plaintiff fails to show he suffered an "atypical and significant hardship" distinguishable from standard prison life. Doc. No. 23-1 at 20; Doc. No. 28 at 2. Further, Defendants highlight that Plaintiff admits he was never housed in administrative segregation.

The Due Process Clause protects prisoners against deprivation or restraint of "a protected liberty interest" and "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) (internal quotation marks omitted). "Typically, administrative segregation in and of itself does not implicate a

---

[5] Because the Court grants Plaintiff leave to amend his Eight Amendment conditions of confinement claim against Defendants Urban and Ruelas, the Court declines to rule at this time on Defendants' motion to dismiss this claim as to unserved Defendant Nunez.

protected liberty interest." *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003); *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (administrative segregation falls within the terms of confinement originally contemplated by a sentence). A prisoner generally has no liberty interest in avoiding transfer to more restrictive conditions of confinement, such as a transfer from the general population to segregation, unless he can show an atypical and significant hardship in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. In *Sandin*, the Supreme Court considered three factors in determining whether the plaintiff possessed a liberty interest in avoiding disciplinary segregation: (1) the disciplinary versus discretionary nature of the segregation; (2) the restricted conditions of the prisoner's confinement and whether they amounted to a "major disruption to his environment" when compared to those shared by prisoners in the general population; and (3) the possibility of whether the prisoner's sentence was lengthened by his restricted custody. *Sandin*, 515 U.S. at 486–87.

Courts have found the existence of atypical and significant hardships in a very limited scope of cases. *See, e.g., Wilkinson v. Austin*, 545 U.S. 209, 221–24 (2005) (holding inmates' liberty interests were implicated by their indefinite confinement in highly restrictive "supermax" prison, where the inmates were deprived of almost all human contact and were disqualified from parole consideration); *Serrano*, 345 F.3d at 1078–79 (placing disabled inmate, without his wheelchair, in segregation unit not equipped for disabled persons gave rise to a liberty interest); *Ramirez*, 334 F.3d at 861 (directing district court to consider two-year duration of administrative segregation in determining whether placement imposed atypical and significant burden). "A liberty interest does not arise even when administrative segregation imposes severe hardships, such as denial of access to vocational, educational, recreational, and rehabilitative programs, restrictions on exercise, and confinement to a cell for lengthy periods of time." *Toussaint v. McCarthy*, 801 F.2d 1080, 1092 (9th Cir. 1986) (internal quotations omitted).

Plaintiff fails to plead sufficient facts to demonstrate not only that he was placed in

administrative segregation, but also that he faced "an atypical and significant hardship in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Although administrative segregation can be a basis for a Fourteenth Amendment violation, it must entail actual placement in administrative segregation. *See Serrano*, 345 F.3d at 1078–79; *Ramirez*, 334 F.3d at 861. Here, Plaintiff was placed on suicide watch before he was placed in administrative segregation. Thus, Plaintiff lacks standing to bring a claim based upon illegal placement in administrative segregation because Plaintiff lacks an "injury in fact" that is "actual or imminent, not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 561. Without actual placement in administrative segregation, Plaintiff's due process claim fails.

Even if Plaintiff did have standing to bring his due process claim based on illegal administrative segregation placement, Plaintiff fails to plead facts demonstrating that defendants caused Plaintiff "an atypical and significant hardship." *Sandin*, 515 U.S. at 484. Administrative segregation alone is insufficient to trigger a protected liberty interest of the Fourteenth Amendment. *Serrano*, 345 F.3d at 1078; *May*, 109 F.3d at 565. Plaintiff's complaint lacks any additional facts that show an atypical or significant hardship.

Accordingly, the Court **DISMISSES** Plaintiff's Fourteenth Amendment claim against Defendants Scharr and Bermudez **with prejudice** given Plaintiff's lack of standing. *See Lujan*, 504 U.S. at 561.

### V. Disability Claim

Plaintiff appears to allege a cause of action under the Americans with Disabilities Act ("ADA") when he claims that Defendants Bermudez and Scharr threatened Plaintiff with being moved to administrative segregation if he did not move to a new cell despite Plaintiff explaining his osteoarthritis prevented him from doing so. Defendants do not address this issue in their motion to dismiss.

Title II of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act ("RA") "both prohibit discrimination on the basis of disability."

*Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Section 504 of the RA provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U. S. C. § 794. Title II of the ADA and the RA apply to inmates within state prisons. *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998); *see also Armstrong v. Wilson*, 124 F.3d 1019, 1023 (9th Cir. 1997) ("Nothing in the legislative history of the RA or ADA reflects an intent by Congress to exclude prisons or prisoners from the reach of the statutes."); *Duffy v. Riveland*, 98 F.3d 447, 453-56 (9th Cir. 1996).

"To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." *Lovell*, 303 F.3d at 1052. A plaintiff alleging a violation of § 504 of the RA must show the following: "(1) [he] is handicapped within the meaning of the RA; (2) [he] is otherwise qualified for the benefit or services sought; (3) [he] was denied the benefit or services solely by reason of [his] handicap; and (4) the program providing the benefit or services receives federal financial assistance." "To recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant," and the standard for intentional discrimination is deliberate indifference. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id.* at 1139 (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1988)).

Plaintiff fails to state a claim under either the ADA or RA because of standing and mootness shortcomings. Article III standing requires a plaintiff to demonstrate three elements: (1) plaintiff must have "suffered an 'injury in fact,'" (2) "there must be a causal connection between the injury and the conduct complained of," and (3) it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 561 (1992) (internal quotations omitted). In addition, under the mootness doctrine, a party "must continue to have a 'personal stake in the outcome' of the lawsuit . . . . This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (citations and internal quotations omitted).

Here, Plaintiff fails to show how he suffered a concrete injury in fact because he never moved to the new cell. Instead, he was placed in the Central Treatment Center for a pre-administrative segregation medical evaluation and then subsequently placed on suicide watch before the move could occur. Thus, Plaintiff never suffered the actual injury of being placed in a non-ADA compliant cell. Moreover, Plaintiff does not have a possible remedy even if he suffered an injury in fact. Plaintiff has since been transferred to a different correctional facility.

Accordingly, the Court **DISMISSES** Plaintiff's implicit cause of action under Title II of the ADA and under the RA **with prejudice** because Plaintiff lacks Article III standing and the remedy sought for lower bunk placement is moot given Plaintiff's prison transfer.

**VI. Motion for Preliminary Injunction**

Plaintiff moves for a preliminary injunction against "CDCR and its staff" arising out of his transfer from RJD to Kern Valley State Prison in Delano, California. Plaintiff asserts that he was transferred in retaliation for filing this civil rights action, and argues that he is unsafe at Kern Valley due to his previous participation in a television documentary.

## A. Legal Standard

Injunctive relief, whether temporary or permanent, is an "extraordinary remedy, never awarded as of right." *Winter v. Natural Res. Defense Council*, 555 U.S. 7, 22 (2008). A plaintiff seeking injunctive relief "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20). An injunction may only be awarded upon a clear showing that the plaintiff is entitled to relief. *Winter*, 555 U.S. at 22. Requests for prospective relief are further limited by the Prison Litigation Reform Act, which requires that the Court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the federal right, and is the least intrusive means necessary to correct the violation of the federal right." 18 U.S.C. § 3626(a)(1)(A).

## B. Analysis

In order to merit immediate injunctive relief, Plaintiff must establish probable success on the merits with respect to his claims. Plaintiff must also demonstrate that irreparable injury is likely in the absence of an injunction. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). Plaintiff fails to make the required showing. Moreover, "[a] federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court." *Zepeda v. United States Immigration & Naturalization Service*, 753 F.2d 719, 727 (9th Cir. 1983). In other words, the Court's injunction can bind only those persons over which the Court has power. *Id.* Plaintiff's claims arise out of events occurring at RJD, where Plaintiff is no longer housed. As such, the Court lacks the authority to order "CDCR and its staff" at Plaintiff's current facility, i.e. officials not subject to the Court's jurisdiction, to house Plaintiff at the facility of his choice. Nor does Plaintiff does not have a constitutional right to incarceration in a prison of his choice. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).

Finally, the Court notes that Plaintiff has since been transferred to California Health Care Facility in Stockton, California. As such, his concerns regarding his safety at Kern Valley are now moot. Accordingly, the Court **DENIES** Plaintiff's motion for a preliminary injunction.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** defendants' motion to dismiss portions of Plaintiff's complaint. In consideration of the Ninth Circuit's liberal amendment policy, the Court **GRANTS** Plaintiff leave to file an amended complaint on or before **May 31, 2018** in order to cure the deficiencies set forth above with respect to his First Amendment retaliation claims against Defendants Buenostro and Bermudez, his First Amendment access to courts claim against Defendant Buenostro, and his Eighth Amendment conditions of confinement claim against Defendants Urban and Ruelas. The Court **DENIES** Plaintiff's motion for a preliminary injunction.

**IT IS SO ORDERED**.

DATE: April 25, 2018

HON. MICHAEL M. ANELLO
United States District Judge